**Polet TCHAKARSKI, Ens Legis Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 05–983T.**

United States Court of Federal Claims.

Oct. 31, 2005.

Polet Tchakarski, Henderson, Nevada, pro se.

Willaim C. Rapp, United States Department of Justice, Washington D.C., for defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

### RELEVANT FACTS AND PROCEDURAL HISTORY

Until January 2000, Mr. Polet Dotchev Tchakarski was an employee at PurchasePro.com, headquartered in Las Vegas, Nevada. *See* Complaint ("Compl.") ¶¶ IV.1–2. In May of 2000, Mr. Tchakarski contacted his former employer by phone to request stock options that he allegedly was entitled to receive, pursuant to a Stock Options Contract. *Id.* ¶ IV.3. PurchasePro.com told him to call back a few weeks later. *Id.* ¶ IV.3. When Mr. Tchakarski called again, he accepted PurchasePro.com's offer to transfer half of these options. *Id.* ¶¶ IV.4–5. Based on an exchange that occurred during that phone call, Mr. Tchakarski believed that Purchase-

Pro.com would withhold applicable taxes from the sale of the stock and then forward taxes due to the Internal Revenue Service ("IRS"). *Id.* ¶¶ IV.6–8. Mr. Tchakarski expected to file a Form 1040, because he believed the sale of his stock would be treated as income and reflected in his 2000 W–2 Statement. *Id.*

In January 2001, Mr. Tchakarski discovered that $14,000 in taxes on the sale of his PurchasePro.com stock was not reported on the 2000 W–2 Statement. *Id.* ¶ IV.10. Mr. Tchakarski contacted PurchasePro.com about the error, because his broker informed him that PurchasePro.com had withheld $14,000 in taxes on the sale of his stocks. *Id.* ¶¶ IV.9, 11. PurchasePro.com's apparent understanding was that Mr. Tchakarski promised to pay the taxes at issue. *Id.* ¶ IV.11. PurchasePro.com did not respond to Mr. Tchakarski's subsequent written request for further explanation. *Id.*

On April 15, 2001, Mr. Tchakarski filed a notice of extension to file with the IRS. *Id.* ¶ IV. 12. In August 2001, he also filed an explanation with the IRS as to why could not file a 2000 tax return. *Id.* Between September 2004 and August 2005, Mr. Tchakarski received four letters from the IRS, including at least two 2000 assessments. *Id.* ¶¶ IV.14–15, 17. Among this correspondence was a September 10, 2005 Final Notice of Intent to Levy and Notice of Right to Hearing (effective thirty days after the date of the letter) and a November 30, 2004 Notice of Deficiency with a total amount due of $23,846.70 (effective ninety days after the date of the letter). *See* Pl.Ex. 1; Pl.Ex. 3. Mr. Tchakarski sent written responses to these letters *See* Compl. ¶¶ IV.14–16.

On June 5, 2005, Mr. Tchakarski made a request, pursuant to the Freedom of Information Act, 5 U.S.C. §§ 552, *et seq.*, ("FOIA"), for Polet Tchakarski's Individual Master File ("IMF") Master Record from the IRS's office in Phoenix, Arizona. *Id.* ¶ IV.18; Pl.Ex. 2. On July 14, 2005, Mr. Tchakarski received a response from the IRS's Disclosure Officer stating that IMF Transcripts were strictly for internal IRS use, but noting that Document 11734, Transaction Code Pocket Guide, previously was provided to Mr. Tchakarski in response to an earlier FOIA request. *See* Pl.Ex. 2. The July 14, 2005 letter also explained that one of the requested items, Document 6209, is not available to the public. *Id.* An explanation of Mr. Tchakarski's appeal rights also was enclosed. *Id.*

On August 27, 2005, Mr. Tchakarski received a notice of the IRS's intent to levy his assets unless the balance due of $26,074.34 was paid within ten (10) days of the notice. *See* Compl. ¶ IV.19; Pl.Ex. 1. Mr. Tchakarski promptly mailed a response to this notice. *See* Compl. ¶ IV.20.

### PROCEDURAL HISTORY

On September 12, 2005, Mr. Polet Dotchev Tchakarski filed an unsigned *pro se* Complaint on behalf of POLET TCHAKARSKI, *Ens Legis* Plaintiff.[1] *See* Compl. The Complaint alleges that the Internal Revenue Service's efforts to collect taxes by levying on Mr. Tchakarski's assets violates "due process rights," under 42 U.S.C. § 1983, and is a conspiracy to interfere with his civil rights, under 42 U.S.C. § 1985; constitutes a tort action for fraud, intimidation, negligence, and threats; amounts to a taking of property without just compensation; and is a breach of a government contract. *Id.*

The Complaint states that Mr. Tchakarski is also intervening in his individual capacity as a third party plaintiff, pursuant to RCFC 24(a) and "under the Security Agreement in Exhibit 3." *Id.* ¶ I.4. The Complaint requests no relief on behalf of POLET TCHAKARSKI, *Ens Legis* Plaintiff. *Id.* ¶ VI. Instead, the Complaint requests that the court: (1) issue a temporary restraining order prohibiting the Internal Revenue Service "from levying certain assets, from starting the collection process, and from filing a Notice of Federal Tax Lien;" (2) enter "a preliminary

---

1. *"Ens Legis"* describes "an entity, such as a corporation, that derives its existence entirely from the law." BLACK'S LAW DICTIONARY at 572 (8th ed.2004). The Complaint alleges that POLET TCHAKARSKI is a legal entity or corporation.

*See* Compl. ¶ III.1; Pl.Ex. 3.. The court's resolution of Mr. Tchakarski's motion makes it unnecessary to ascertain the alleged factual difference between *Ens Legis* POLET TCHAKARSKI and the individual Polet Dovet Tchakarski.

and permanent injunction against defendant to enjoin and prohibit him from the actions he intends to start;" (3) "enter a declaratory judgment, finding the actions of defendant unlawful, malicious and unconstitutional;" and (4) "award him money damages and such other relief as may be reasonable and just under the circumstances including Plaintiff's reasonable attorney's fees and costs." *Id.*

On September 26, 2005, Mr. Tchakarski filed a Motion for Granting Emergency Temporary Restraining Order ("Cease–Fire") Against the Defendant ("Motion"). The Motion requested the court to "grant a Temporary Restraining Order enjoining the defendant in an emergency manner." Mot. ¶ I.1. The bases for intervention is that Mr. Tchakarski, as an individual, possesses a senior lien on the corporation, POLET TCHAKARSKI, with which the IRS's tax collection activity will interfere. *Id.* ¶ I.4 (referencing Pl.Ex. 3, a UCC Financing Statement regarding the individual Mr. Tchakarski's security interest in the organization POLET TCHAKARSKI). Mr. Tchakarski's Motion was accompanied by a Points and Authorities in Support ("Pl.Mem."), filed by leave of the court.

On October 5, 2005, the Government filed an Objection to Plaintiff's Motion for a Temporary Restraining Order. On October 28, 2005, in lieu of a reply, the Court received a Motion to Strike and Memorandum in Support of Grounds for Plaintiff's Action from Mr. Tchakarski, both of which were filed by leave of the court on October 31, 2005.

### DISCUSSION

**A. Jurisdiction.**

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to adjudicate claims for monetary damages against the United States based on the United States Constitution, an Act of Congress, a regulation of an executive department, an express or implied contract with the United States, or liquidated or unliquidated damages in cases not sounding in tort. *See United States v. Testan,* 424

U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The court's jurisdiction for equitable relief is limited. *See, e.g., Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1350 (Fed.Cir.2004) (affirming that the United States Court of Federal Claims can grant equitable relief in cases concerning a bid protest). A substantive right must exist independent of 28 U.S.C. § 1491 because the Tucker Act does not create any substantive right for monetary damages. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980).

**B. Standard Of Review In *Pro Se* Cases.**

Plaintiff is a *pro se* litigant and therefore the court holds the pleadings to a less stringent standard than a litigant represented by counsel. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). It has long been the traditional role of the court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969). Although the fact that a plaintiff "acted [*pro se*] in the drafting of his complaint may explain its ambiguities ... it does not excuse its failures, if such there be." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995).

**C. The Court's Resolution Of The September 26, 2005 Motion For "Granting Emergency Temporary Restraining Order ('Cease Fire')."**

The Rules of the United States Court of Federal Claims require that any proposed intervention must be made by a motion served on the parties. *See* RCFC 24(c) (requiring persons desiring to intervene to serve a motion to intervene on the parties); *see also* RCFC 24(a) (providing for intervention of right upon timely application when the applicant claims an interest relating to the property of transaction which is the subject of the action). Having failed to submit such a motion, Mr. Tchakarski has not properly intervened in this case and, therefore, is not a party.[2]

---

2. The court declines to treat paragraph I.4 in the Complaint as a Motion to Intervene. *See* Compl.

¶ I.4. ("The Third Party Plaintiff is intervening

**D. The United States Court Of Federal Claims Does Not Have Jurisdiction Over The Claims Set Forth In The September 12, 2005 Complaint.**

The September 12, 2005 Complaint alleges several statutory bases for the court's jurisdiction: federal question jurisdiction, 28 U.S.C. § 1331; the Civil Rights Act, 42 U.S.C. §§ 1983, *et seq.;* and equitable relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* *See* Compl. ¶ I.

■ The United States Court of Federal Claims does not have authority to exercise general federal question jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331 ("The *district courts* shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (emphasis added)); *see also Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997) ("Once again, the trial court [United States Court of Federal Claims] correctly held that it lacks the general federal question jurisdiction of the district courts.").

■ The court also does not have jurisdiction under the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.,* because the district courts have exclusive jurisdiction over claims alleging civil rights violations. *See* 28 U.S.C. § 1343(a) ("The *district court* shall have original jurisdiction of any civil action authorized by law to be commenced by any person... [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." (emphasis added)); *see also Rogers v. United States,* 14 Cl.Ct. 39, 50, *aff'd,* 861 F.2d 729 (Fed.Cir.1988) (holding that 28 U.S.C. § 1343 gives exclusive jurisdiction over claims alleging civil rights violations to the district courts).

■ Third, the court also does not have jurisdiction under the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201–2202. Although that statute provides that "any court of the United States" may render a declaratory judgment, the Act does not give jurisdiction to the United States Court of Federal Claims to grant a declaratory judgment. *See* 28 U.S.C. §§ 2201, *et seq.; see also Nat'l Air Traffic Controllers Ass'n v. United Stated,* 160 F.3d 714, 717 (Fed.Cir.1998) (affirming that Congress did not intend for the Declaratory Judgment Act to extend the jurisdiction of the United States Court of Federal Claims).

■ In addition, to the extent that the Complaint alleges claims sounding in tort against the Government for fraud,[3] intimidation,[4] negligence,[5] and threat,[6] the United States Court of Federal Claims does not have jurisdiction. *See* 28 U.S.C. § 1491; *see also Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) (restating that the United States Court of Federal Claims does not have jurisdiction over tort claims).

■ Although the court has jurisdiction over claims alleging an unconstitutional taking of private property, it does not have

under RCFC 24(a)(2) and under the Security Agreement in Exhibit 3.").

3. Compl. ¶¶ V.A.4–6, V.B4 ("Fraud into Execution—IRS was given notice that a fraud exists in 2001 but IRS ignored this and kept executing their process."; "Fraud into Execution—Scott B. Prentky was given a notice of full acceptance and proposal for settlement and closure of the alleged debtor's 'account', but this offer was wrongfully ignored (Exhibit 4)."; "Fraud—Scott B. Prentky compiled his assessment by using numbers, without dollar sign on them, misleading the Secured Party to believe the computations were in dollars."; "Fraud—Notice 393 is misleading as to jurisdiction during appeal. Defendant is not disclosing the fact that an appeal would give (subject matter) jurisdiction to the tax tribunal.");

Mem. at I.5 ("Mailing harassment letters and threatening to 'levy on certain assets' is dishonor/contempt after the issue has been settled back in December of 2004.").

4. Compl. ¶ V.A.1 ("Phrases are against the procedural due process, construed to maliciously intimidate and pursue the alleged debtor to 'pay' the amount owed.").

5. Compl. ¶ V.A.7 ("Negligence—Scott B. Prentky owes Secured Party a duty but Scott B. Prentky has disregarded it. As a result Secured party is about to suffer damages.").

6. Compl. ¶ V.A.1 ("Threatening with action that IRS has no lawful authority to do so.").

jurisdiction over the "takings claim" in this case, because, as a matter of law, a notice of a tax lien is not a taking.[7] *See First Atlas Funding Corp. v. United States,* 23 Cl.Ct. 137, 139 (1991) (holding that a lien is merely a means of securing a position as a creditor and, therefore, the filing of a notice of a tax lien against a property interest does not state a takings claim). In addition, although the United States Court of Federal Claims has jurisdiction to hear third party levy contests brought as takings claims or pursuant to an implied contract theory, the court does not have jurisdiction in this case because the Complaint does not allege that a levy has occurred and Mr. Tchakarski is not a party. *See Gordon v. United States,* 227 Ct.Cl. 328, 649 F.2d 837, 838–43 (1981) (determining that jurisdiction exists under the Tucker Act to hear third party levy contests brought as takings claims or under implied contract theories, but dismissing the case on statute of limitations grounds).

Finally, the Complaint does not identify Mr. Tchakarski as a party to any contract with the Government.[8] *See* Compl. ¶ IV.22.A. Therefore, the Complaint does not invoke the court's Tucker Act jurisdiction.

 Although, only claims for "actual presently due money damages from the United States" can invoke the jurisdiction of the United States Court of Federal Claims, Mr. Tchakarski requests equitable relief in the form of a declaratory judgment, a preliminary injunction, a permanent injunction, and a temporary restraining order declaring that the Government's efforts to enforce a tax lien unlawful and prohibiting the Internal Revenue Service from levying taxes. *See* Compl. ¶¶ VI..1–2. The requested relief, however, is outside the jurisdiction of the court except in limited circumstances not applicable here. *See Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir.2000) ("Except in strictly limited circumstances, there is no provision in the Tucker Act authorizing the [United States] Court of Federal Claims to order equitable relief." (internal citation omitted)).

## CONCLUSION

For the foregoing reasons, Polet Dotchev Tchakarski's Motion for Granting Emergency Temporary Restraining Order ("Cease–Fire") is **DENIED.** *Ens Legis* Plaintiff POLET TCHAKARSKI's Complaint is **DISMISSED,** because the United States Court of Federal Claims does not have jurisdiction over the alleged claims.

**IT IS SO ORDERED.**

---

7. Compl. ¶ V.A.2 (" 'Intended' Conversion—taking property without just compensation.").

8. *See generally* Compl. ¶ V.C (referencing the UCC and contracts); Mem. at 1 ("pursuant to Rules 57").